UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

JAIME DAVID CAMARGO ECHEA,               :
                                         :     **MEMORANDUM DECISION AND**
                        Petitioner,      :     **ORDER**
                                         :
           - against -                   :     26-cv-2527 (BMC)
                                         :
TODD BLANCHE, Acting Attorney General    :
of the United States; KENNETH GENALO,    :
Director, New York Field Office, ICE     :
Enforcement and Removal Operations       :
Division; MARKWAYNE MULLIN,              :
Secretary of Homeland Security; DAREN K. :
MARGOLIN, Director, Executive Office for :
Immigration Review; RAUL MALDONADO       :
JR., Warden, Metropolitan Detention Center; :
and TODD M. LYONS, Acting Director, U.S. :
Immigration and Customs Enforcement,     :
                                         :
                        Respondents.     :
                                         :
------------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner Jaime David Camargo Echea, a Peruvian national, seeks a writ of habeas

corpus under 22 U.S.C. § 2241 ordering his immediate release from U.S. Immigration and

Customs Enforcement ("ICE") detention, or in the alternative, a bond hearing pursuant to

8 U.S.C. § 1226(a). For the following reasons, the petition is granted, and respondents shall

provide petitioner with a bond hearing forthwith.

## BACKGROUND

Petitioner was apprehended by U.S. Customs and Border Protection ("CBP") on August

24, 2022, near Hidalgo, Texas, after unlawfully entering the United States. CBP subsequently

transported petitioner to a processing center in McAllen, Texas, where it issued him a Notice and

Order for Expedited Removal (Form I-860) pursuant to 8 U.S.C. § 1225(b)(1). However,

petitioner simultaneously expressed a fear of returning to Peru, so CBP s referred petitioner to an asylum officer.  See 8 U.S.C. § 1225(b)(1)(A)(ii) ("If an immigration officer determines that an alien ... indicates either an intention to apply for asylum ... or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer[.]").

The asylum officer found no credible fear of persecution and thus issued petitioner an expedited removal order.  See 8 U.S.C. § 1225(b)(1)(B)(iii)(I) ("[I]f the officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed ... without further hearing or review.").  Petitioner requested a "prompt review by an immigration judge," see 8 U.S.C. § 1225(b)(1)(B)(iii)(III), who found that petitioner did establish a credible fear.  Accordingly, petitioner's expedited removal order was vacated, and he was placed into removal proceedings under 8 U.S.C. § 1229a to adjudicate his asylum application.

On October 3, 2022, ICE issued petitioner a Notice to Appear (Form I-862) for removal proceedings.  The next day, ICE issued petitioner a Notice of Custody Determination (Form I-286), which indicated that petitioner was being released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226] and [8 C.F.R. § 236]."  Two days after that, ICE granted petitioner humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) for a period of one year.  His parole automatically terminated on October 5, 2023.

On February 28, 2026, over two years after the expiration of petitioner's parole and while petitioner's asylum-related removal proceedings were ongoing, ICE agents tracked down petitioner outside his place of work and arrested him pursuant to a Warrant for Arrest of Alien (Form I-200).  Petitioner was transferred first to an ICE holding room, then to various Nassau County facilities, then to a detention facility in Newark, New Jersey.  Eventually, on March 9,

2

2026, ICE transferred petitioner to the Metropolitan Detention Center in Brooklyn, New York, where he remains to this day.

Petitioner seeks a writ of habeas corpus on the grounds that his detention violates 8 U.S.C. § 1226(a), his due process rights, and the Administrative Procedure Act.[1]

## DISCUSSION

### I.   Legal Standard

Habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011); see also Öztürk v. Hyde, 136 F.4th 382, 393 (2d Cir. 2025).  The Court may issue a writ under Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).

### II.   Analysis

"[A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)).  "Such parole ... 'shall not be regarded as an admission of the alien.'" Id. (quoting § 1182(d)(5)(A)).  At the same time, § 1182(d)(5)(A) "is not an independent authority to detain parolees following the expiration of parole." Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025) (citing Clark v. Martinez, 543

---

[1] As set forth *infra*, petitioner prevails on the first ground.  Therefore, the Court need not consider petitioner's other grounds.

U.S. 371, 385 (2005)).  Rather, upon expiration of parole, a noncitizen returns to "the custody from which he was paroled."  See id. (quoting § 1182(d)(5)(A).

Respondents assert that following the expiration of petitioner's parole, petitioner's status reverted to § 1225(b)(1)(B)(ii), making his detention mandatory.  But § 1225(b)(1)(B)(ii) is plainly inapplicable.  That subsection is triggered only when "the [asylum] officer determines at the time of the interview that [the] alien has a credible fear of persecution."  Here, the asylum officer determined that plaintiff did *not* have a credible fear.

After that negative credible fear determination, § 1225(b)(1)(B)(*iii*) applied.  Subsection (b)(1)(B)(iii)(I) states that "if the [asylum] officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review."  However, subsection (b)(1)(B)(iii)(III) provides a failsafe: an alien who receives a negative credible fear determination from an asylum officer may request "prompt review [of that determination] by an immigration judge."  In sum, subsection (b)(1)(B)(iii)(I) applied to petitioner and would have resulted in petitioner's removal, but because he requested and received review by an immigration judge, subsection (b)(1)(B)(iii)(III) kicked in.

Once petitioner moved into the purview of § 1225(b)(1)(B)(iii), his detention was governed by § 1225(b)(1)(B)(iii)(IV).  Subsection (b)(1)(B)(iii)(IV) states, "Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."  Petitioner was appropriately detained pending final determination of credible fear of persecution by the immigration judge. The immigration judge found that he *did* have such a fear.  Following that finding, there was no longer a basis under subsection (b)(1)(B)(iii)(IV) to detain him.

4

The result is that § 1225(b)(1)(B)(ii), which respondents rely upon for their detention authority, provides no basis to mandatorily detain petitioner because it *never* applied to petitioner. And for what it's worth, although § 1225(b)(1)(B)(iii) previously applied to petitioner, it no longer applies following petitioner's receipt of a positive credible fear determination from the immigration judge.

Again, the reason that this matters is that petitioner was detained following the expiration of his humanitarian parole. With the expiration of parole, petitioner's status reverted to "the custody from which he was paroled": detention. See § 1182(d)(5)(A). The question is not whether detention is permissible – it is. Rather, the question is: what is the statutory authority for petitioner's detention? If the answer is § 1225(b)(1)(B)(ii), then detention is mandatory. However, as explained above, § 1225(b)(1)(B)(ii) appears to be inapplicable.

Following the Second Circuit's recent decision in Cunha v. Freden, --- F. 4th ----, 2026 WL 1146044 (2d Cir. Apr. 28, 2026), the answer to that question must be § 1226(a), making petitioner's detention discretionary and rendering him eligible for a bond hearing.[2] In Cunha, the Second Circuit held that § 1226(a) applies to noncitizens "who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." Id. at *5. That definition plainly includes petitioner, whose present detention precipitated from an arrest within the interior, over three and a half years after his entry into the country and over two years after the expiration of his parole.[3]

---

[2] Cunha forecloses the possibility that some other subsection of § 1225 applies. "A noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226, so if [p]etitioner was detained pursuant to one provision, []he cannot be subject to the other." Tumba v. Francis, 813 F. Supp. 3d 394, 402 (S.D.N.Y. 2025) (internal quotation marks and citation omitted).

[3] There are, admittedly, some differences between the instant case and Cunha. Of note, petitioner was *re-*apprehended within the interior after being initially apprehended at the border; Cunha was apprehended in the interior, decades after entering the country. But that difference doesn't warrant a different result because ICE decided not to keep petitioner in custody. Petitioner is still "deemed to be an 'applicant for admission' by Section

**CONCLUSION**

Petitioner's detention is governed by § 1226(a), and so his habeas petition is granted.[4]

The Government must provide petitioner with a bond hearing forthwith.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
      May 27, 2026

---

1225(a), but he is not 'seeking admission' because he is not requesting lawful entry into the United States after inspection and authorization." Id. at *23.

[4] The Court was presented with substantially similar facts in Ajay v. Maldonado, No. 26-cv-0676, 2026 WL 1045420 (E.D.N.Y. Apr. 17, 2026), but there, held that the petitioner was subject to mandatory detention under § 1225(b)(1). However, the Court did not have the benefit of Cunha's guidance, which calls much of its prior reasoning into doubt.

6